## Cavanaugh et al. v. Cavanaugh et al.

May 28, 1940.

Ira D. Smith, Judge.

S. Y. Trimble, IV, for appellants.

Schutz & Fleming for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

When J. H. Cavanaugh died in 1918 he left nine children and 182 acres of land. After awhile his sons, Otho Thompson and Sam, and daughter, Cora, jointly purchased the interest of one of the children, and Otho individually bought out another. In 1923, a suit was brought to sell the property for a division of the proceeds. It was agreed by the four named that they would jointly buy the place, that is, acquire the interests still owned by three of the children. In order to obtain a loan from the bank, it was necessary that the purchase be made in the name of one of them instead of all. Accordingly, Otho was shown as the purchaser of the farm for $3,700. There is no dispute that this was for the benefit of himself and his three associates, although no deed or formal assignment to the other three was ever executed. The four parties borrowed $1,500 from the bank with which to satisfy the other three whose interests were being acquired. The condition then was that Otho owned three-ninths and each of the others two-ninth undivided interest. But each of them owed one-fourth of the $1,500 debt since it was incurred to pur-

chase the outstanding interests equally and jointly. Tenants were placed on the farm in 1925 and 1926. The result seems to have been only that Otho finally had to pay the store accounts of the tenants for which he and his co-owners as landlords were responsible. In 1927 Otho, an unmarried man, and his widowed sister, Cora, moved on the place. There is a little dispute as to whether this was agreed to by his two brothers, but there is no evidence as to the terms under which he occupied the farm. The situation remained this way until 1935, when this suit was brought to sell the place and divide the proceeds. At that sale, held in 1938, Otho bought the farm for $1,600, for which he executed a sale bond. The sister, Cora, assigned her interest to Otho.

This appeal involves a settlement of the accounts among the parties. The case seems to have been neglected for there was much delay during which the record was lost and had to be supplied. Three judgments were rendered along the way, but as finally entered it was adjudged that Otho owed each of his two brothers $428.70, and in addition attorneys' fees and costs amounting to $221.65. He insists on this appeal that a correct accounting will show that his brothers owe him instead.

Before the sale Otho had individually paid off $1,000 of the mortgage loan of $1,500 incurred in 1923, with interest, to the amount of $774.36, so that Thompson and Sam each owed him one-fourth of those payments. Since the balance represented by an outstanding note for $500 and interest remained a lien on the land, the court directed that it be paid out of the proceeds of the bond. Otho paid the bank directly $587.50 on this account and received credit on the bond. In a settlement between the parties of this item it appears a judgment charged Thompson and Sam each with one-fourth of $1,774.36, but the $587.50 item was treated in the accounting so as to be apportioned according to the fractional interests of title, with the result that Thompson and Sam was each charged with two-ninths instead of one-fourth, the difference being $16.32. To that extent there is an error against Otho.

There seems to be no difference between the parties as to the credit to be given appellant on account of what he paid out for the debts of the tenants, nor for insurance on the property. As to the taxes, Otho testified

that he had paid $356.20, but the judgment gives him credit for only $245.70. It is said in appellee's brief that as it appeared the $356.20 included taxes on other property, the attorneys had examined the tax books and agreed on the amount shown in the judgment. The other side denies the agreement and insists the court should have decided the case on the record.

Nothing was allowed Otho for the value of improvements, it being stated that the court thought it was fair and proper to off-set that against the timber which Otho had cut during his occupancy. The evidence concerning the timber is vague and indefinite. Perhaps that was a fair adjustment, but again appellant insists on the record which shows the value of the improvements to have been far in excess of the value of the timber cut.

The major difference concerns rents. Appellant's evidence is that the average gross cash proceeds was $370 a year, and he insists that as tenant he was entitled to two-thirds of that amount and as a co-owner to one-half of the one-third going to the landlord. The court, however, charged him with $370 a year for ten years. Appellant maintains that in no event should more than eight years' rent have been charged against him for during the first two years of joint ownership he did not occupy the place and no amendment to the petition was filed to cover the transactions subsequent to the institution of the suit in 1935. It appears that the court was of opinion that $370 a year was a fair rental charge since Otho had enjoyed the use of the place entirely as a home and received all products and had not been charged with anything except the cash crops. Again we are confronted with an absence of evidence to support the judgment. As we have said, the record is silent as to what kind of contract or under what conditions Otho took possession of the farm.

It is impossible to take the record and adjudge a complete accounting. Therefore, we reverse the judgment that the parties may file additional pleadings if they desire and produce definite evidence concerning the contract of occupancy or the custom of the community if no express contract is shown. Also to produce definite evidence concerning the other items remaining in dispute.

**Judgment reversed.**